[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff The Connecticut Light and Power Company (CLP) appeals a decision of the defendant department of public utility control in Docket No. 93-11-01 denying CLP's application for recovery of fuel expenses under a generation utilization adjustment clause (GUAC) established pursuant to General Statutes § 16-19b(g). The Office of Consumer Counsel and the Connecticut industrial Energy Consumers participated in these hearings as parties and have filed briefs in this appeal. CLP appeals pursuant to General Statutes §§ 16-35 and 4-183. The court finds in favor of plaintiff CLP.
The facts essential to the court's decision are undisputed and fully reflected in the record. The department is a state agency empowered under Title 16 of the Connecticut General Statutes to set rates, regulate and supervise the operation of Connecticut's public service companies. CLP is a public service company within the meaning of General Statutes § 16-1(4). The base rates CLP charges its customers established in periodic proceedings before the department.
Fuel costs are the largest and most volatile of CLP's operating expenses. Because of the significant impact of fuel price volatility on CLP's ability to cover its costs through rates, the legislature has authorized two mechanisms that permit CLP periodically to adjust its base rates to reflect price and volume changes in the fuel used to generate electricity. CT Page 7307
The first, the fossil fuel adjustment clause (FAC), is an adjustment formula authorized by General Statutes § 16-19b(a). The FAC is superimposed on base rates to adjust those rates for fluctuations in the price of fossil fuels above and below the price level assumed in the base rates when they were originally established. The second, the GUAC, is an adjustment formula authorized by General Statutes § 16-19b(g)[1]. The GUAC is superimposed on base rates to adjust them for the variations in the volume of fossil fuel used by CLP as a result of changes in the generation mix, that is the proportion of fossil to nuclear generating sources during the course of the year.
Electricity generated from nuclear power plants is substantially cheaper than that from fossil fuel plants. Nuclear plants, however, are more prone to unplanned outages and shutdowns, requiring CLP to turn to more expensive fossil fuel sources to replace that energy. Pursuant to the GUAC, CLP establishes a capacity factor, estimating the total nuclear power "nuclear capacity factor," estimating the total nuclear power capacity in the coming year. This figure is used to estimate the total fuel costs that will set the base rates for the year. Whenever the actual nuclear power plant performance differs from the predicted capacity, the base rate may be adjusted up or down through the GUAC and the consumer ratepayers charged or reimbursed accordingly. Since the GUAC formula is applied after the fact, based on actual experience, the consumer charge or reimbursement is effected by an adjustment to the consumers' future electric bills.
In Docket No. 90-12-03, the department established base rates for CLP that were in effect from August 20, 1991 until July 1, 1993. These base rates were subject to FAC and GUAC adjustment throughout that period. In Docket No. 92-11-11, the department established new base rates for the period beginning July 1, 1993. These base rates were also to be subject to FAC and GUAC adjustment during the period they were in effect. In an effort to insure that the GUAC adjustment would reflect actual fuel costs as accurately as possible, and because the department concluded that CLP would overrecover from a "mechanical" application of the GUAC formula, the department ordered CLP to "true-up" the GUAC "to its booked fuel expense, rather than the mechanical result of the GUAC formula."
On August 11, 1993, the department conducted a technical session to discuss the true-up mechanism. At this meeting, the department requested that CLP file a comparison of total fuel CT Page 7308 revenues and expenses for the 1992-93 GUAC period. That exhibit demonstrated that CLP incurred $466 million in fuel expenses and collected $476 million in fuel revenues through the base rate charged during that GUAC year. The department considered this to be an "overrecovery" of $10 million.
On August 19, 1993, CLP filed the required periodic GUAC calculation for department approval. In accordance with that calculation, CLP claimed it should recover $7.9 million from its ratepayers. That amount was the net of a $9,178,481 credit deferral for the September 1992 — August 1993 GUAC period and a $17,120,667 unrecovered adjustment in CLP's favor from a prior GUAC period. These figures are not in dispute. The net amount claimed by CLP was thus derived entirely from application of the approved GUAC to the fuel costs, power generation mix and base rates that were actually incurred and charged during prior years. The company proposed to recover this amount from its customers over twelve months beginning September 1, 1993.
On August 27, 1993, the department notified CLP that the GUAC recovery proposed by the company would have to be reduced by the $10 million "overrecovery." Since the "overrecovery" exceeded the total GUAC charge, there could be no recovery from the ratepayers. The company, of course, objected, and the department conducted the required hearing on the issue. At the hearing, CLP presented evidence showing that most of the $10 million differential was the result of lower nuclear fuel prices. The company asserted that the price of raw uranium dropped from $10 per pound to $8 per pound as a result of an increased supply as the former Soviet republics entered the world energy market.
On January 5, 1994, the department issued a final decision disallowing the entire GUAC recovery on the basis of the $10 million "overrecovery." The final decision read, in part:
 It is inappropriate for the company to bill ratepayers through the GUAC, simply because the mechanical calculation of the GUAC results in a charge, when the Company has already recovered all costs associated with replacement power and fuel. To paraphrase our previous Decision: It is clear that the Company has over recovered $10 million. The Department is obligated to ensure that the Company not recover yet again for expenses it did not incur. Therefore the Department disallows recovery for the $7,942,186 and sets no GUAC CT Page 7309 charge for the period from September 1993 to August 1994.
It is this decision that the plaintiff appeals.
The plaintiff advances three principal arguments as the bases of its appeal: (1) that the department erroneously disallowed recovery of sums produced by the GUAC because of savings realized by the company in the cost of nuclear power; (2) that the department violated the filed rate doctrine in disregarding the results obtained by applying the GUAC to the prior year; and (3) that the disallowance of the GUAC recovery amounts to illegal retroactive ratemaking. The court agrees that the department's decision in this case amounted to illegal retroactive ratemaking.
Plaintiff CLP argues that its base rates for the years prior to September 1993 were approved by the department, were subject to the GUAC, and as such were found by the department to be reasonable and just. CLP asserts that the $10 million excess return, caused by the sharp decline in nuclear fuel costs during the period, was not foreseeable when CLP prepared its rate submission. It argues, however, that such an excess return is neither improper nor illegal, but rather is a legitimate feature of operating an electric company under traditional ratemaking rules.
CLP points out that, in any given year, it will typically recover more than its assumed level of expense (used to set the base rate) on some items and less than the assumed level of expense on other items. Such deviations are expected to even out over the rate-effective year, and the result of that process is designed to yield an approved rate of return on equity for the company's shareholders.
If the company's rate of return is extreme, the law provides a mechanism for sharing the benefits with the consumer ratepayers. Thus, when a public service company earns a return on equity in excess of its approved rate for more than six months or if the department finds that a company may be collecting rates that are unreasonable, General Statutes § 16-19(g) requires the department to initiate proceedings to accomplish an interim consumer rate reduction, to take effect prospectively, during the rate year. The department did not initiate any such proceeding in this case.
No mechanism exists, however, to "true up" individual expense factors in base rates so as to correct retroactively a perceived excessive" deviation from the assumed expense factor. Rather, CT Page 7310 General Statutes § 16-19(a) provides, in relevant part, that "any rate approved by (the department) shall be permitted until amended by the department)." Subsection (a) of § 16-19b provides that an approved GUAC is "superimposed upon the existing rate schedule" and thus effectively becomes part of that approved rate. Subsection (e) of § 16-19b provides that an approved GUAC "shall not be discontinued or suspended except after general rate hearings for the companies affected thereby." Consumer rates, including GUAC adjustments, may not be changed retroactively.
This court has previously specifically affirmed the prohibition against retroactive ratemaking by the department in an earlier case involving these parties. There, this court held
 Once rates are set by a regulating agency in accordance with statutory guidelines, the revenues realized belong to the company. The amount, if any, remaining after paying taxes, and operating expenses, including expenses of depreciation, is the company's compensation for the use of its property. The company both bears the loss below a reasonable return and retains the profit above a reasonable return.
 Rate-making is necessarily present and prospective. Rates are established for the future and it is the generally accepted rule that retroactive rate-making is beyond the power of a regulatory commission. Past experience is, of course, an element in fixing rates and determining an allowable rate of return, but that does not mean that rates fixed for the future should be based upon a higher or lower rate of return because of high earnings or low earnings in the past.
 It is generally held that neither losses sustained nor profit gained by a public utility in the past may be taken into account in fixing rates to be charged in the future.
(Citations omitted; internal quotation marks omitted.) CLP v.DPUC, 40 Conn. Sup. 520, 536-37 (1986). In that case the court concluded:
 When the DPUC discovers that a public service company is earning at levels higher than it found in its last rate proceeding to be fair and reasonable, it can make certain CT Page 7311 adjustments. It can, as indicated above, determine that a rule deferring a portion of current operating expenses, such as fuel costs, should be terminated and all those expenses should be paid out of current revenue. But it cannot snatch from the company's investors earnings derived from approved rates, even if in excess of a fair return in equity, and dedicate them to the company's customers.
Id., 538.
In the present case, the plaintiff company was charging its customers approved rates subject to adjustment under an approved GUAC. These rates and GUAC produced a debit in favor of the company in the amount of $7.9 million, accumulated over the period ended in August 1993. If the ratepayers had paid this debit as it was actually incurred in accordance with the existing rate schedule and GUAC, they would have done so prior to September 1993. The fact that the company was collecting in arrears does not alter the nature of the debit; that is, that the monies are the product of rates previously approved and chargeable to the ratepayers. If the department's decision denying collection of the sums produced by those rates were allowed to stand, it would have the practical effect of changing those rates to something lower. The law does not permit the department to make such changes.
The appeal is sustained and the case is remanded to the department for further action in accordance with this decision.
MALONEY, J.